Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. This is Judge Wilson in Tampa. Judge Lagoa is in Miami and Judge Hull is in Atlanta and I'd like to thank counsel for your assistance. We have three that are scheduled this morning. Thanks for your cooperation with Mr. Barrera of the Circuit Executive's Office, Ms. Nuremberg, the Deputy Clerk, and of course Mr. Robinson who will serve as our courtroom deputy this morning. Mr. Robinson is the timekeeper and he will let you know when the yellow light is on and the red light is on. So we're ready to proceed with the arguments. Counsel, the panel has not previously conferred with regard to these appeals that we were here this morning, but we've read the briefs and we have examined relevant parts of the record. If that will assist you in confining your arguments to the issues on appeal. And so we will begin with the first case, Mackie Chavez Jr. vs. the United States. Mr. Spanhower, Charles Spanhower, is here for Chavez and Jennifer Wau-Karenas is here for the United States. And Mr. Spanhower, are you ready to proceed? Yes, Your Honor. You may proceed. Thank you, Your Honor. Good morning and may it My name is Fritz Spanhower for Appellant Mackie Chavez. The Supreme Court is clear that being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses. Here there's no dispute that Mr. Chavez was violently assaulted in prison when his cellmate, who is almost 40 years younger than him, had a history of mental illness, had a history of assault, and had a history of assaulting his cellmates, woke him up in the district court's decision denied him the opportunity even to get to discovery on either his FTCA claim against the United States or his Bivens claims against the individual prison officials. Both of those decisions were incorrect and should be reversed. I'll turn first to the FTCA claim. The clear weight of circuit authority supports that the discretionary function exception to the FTCA does not immunize conduct that violates the Constitution. That's exactly what this and we'd ask the court to make that that proposition part of its holding here today. In doing so, the court will be following the well-reasoned Lumiere decision from the DC Circuit as well as the clear weight of authority from the other circuits to address this question. Counsel, this is Judge Wilson and we have not yet, like the other circuits, squarely exception can immunize alleged constitutional violations arising out of otherwise discretionary conduct, but the most recent authority is the Seventh Circuit's decision in Lender, and why should we not follow the reasoning of the Seventh Circuit in Lender versus United States? Well, you're correct, Your Honor, that that is the most recent authority, but I would submit to you that the Seventh Circuit is an outlier here, the Lender decision is wrong, and there's a few reasons for that. First, I think if you read the government's brief, it's clear that they initially, that they did not agree with Lender either until they filed their 28-J letter. Their brief was clear that they think it's clear that if conduct is unconstitutional, then it's no discretionary, and that's at the government's brief at 11. But in the Lender case, the court there misunderstood the interplay between the FTCA claim under state law and the constitutional violation, which is simply there to remove the discretionary function exception. The Seventh Circuit suggested that Lender was seeking to hold the government liable for a constitutional tort, but that is not what Lender was seeking to do. Instead, Lender was seeking to hold the government liable for a state law tort under the FTCA, and the presence of the constitutional violation simply meant that the conduct was not discretionary, and therefore the discretionary function exception did not apply. So Lender really misunderstands the issue, and I think if the court reads both Lender and Lumiere from the D.C. Circuit, the court will see that Lender does not even address the other circuit's authority. It does not address the Lumiere case or any of the other circuit cases with which it is disagreeing. And so in contrast, the Lumiere court directly addresses that argument, because the government did make it in Lumiere, and says, no, that's a misunderstanding of the interplay between the FTCA and the Lumiere case, which the import of the constitutional violation for the FTCA claim is simply that that means that the conduct cannot be discretionary, and therefore the discretionary function exception does not apply. Well, the government makes another argument, and it's brief. The government says that you cannot merely assert a constitutional violation. That's not enough to avoid the exception. You need more than a conclusory allegation that there was a constitutional violation. Tell me why you don't have that here. Well, I would agree with the government that you do need more than a conclusory allegation, and the government says that Mr. Shivers is simply relabeling his claim as a constitutional violation, but that is not the case. And just a word on the standard. I believe that the court should follow the Lumiere court standard and say that the plaintiff must plausibly allege a constitutional violation. It cannot be a simple conclusory allegation. But here, Mr. Shivers has much more than a conclusory allegation. We do think that the court should remand it for the district court to address this question in the first instance, but we think it's clear that the district court will find that Shivers has alleged a constitutional violation, and that is because under this court's precedent in the Bowen case, the facts that Mr. Shivers has alleged show that the federal official's conduct was in violation of the Eighth Amendment. Prison officials knew that Dodson posed a substantial risk of serious harm to Mr. Shivers. He was mentally ill. He had a history of Mr. Shivers expressed his fears that Mr. Dodson was acting erratically and that he might harm Mr. Shivers, and the government officials didn't do anything. Mr. Shivers' fears came true. So the government officials' disregarding of those risks led to Mr. Dodson attacking Mr. Shivers, and that is, that more than meets the threshold at the pleading stage where we're dealing with a motion to dismiss, a complaint filed by a pro se litigant, which is to be liberally construed, and of course all the inferences taken in the plaintiff's favor. Judge Hull, am I correct the plaintiff did not make the argument in the district court regarding the exception to the discretionary function? Well, he did argue in the district court that the discretionary function did not apply, but he did not make this particular... That was because they hadn't met the factual burden and he needed discovery. Yes, Your Honor. We think that he, well, he certainly did not make it in exactly the same way we are making it here today, but we think that... I understand he's pro se in the district court, but the district court, you just said, I want to remand on it, and that's because he didn't raise the exception to the discretionary function issue in the district court, so we don't have a ruling by the district court on this issue that you're focusing on. That's all I'm trying to clarify. Yes, Your Honor, that's correct. The district court has not addressed in the first instance whether Mr. Shivers has plausibly alleged a constitutional violation, and that's why we think that appropriate course here would be to remand to allow the district court to make that decision in the first instance. The district court has not even addressed whether or not, if he has plausibly alleged one, whether the discretionary function exception would not apply. Well, we think that the court should reverse, because the district court has not addressed that question, and remand to the district court... the let's call it the Linder-Lumier question either. Yes, Your Honor. Is that is that correct? I'm just making sure. That is correct. The district court did not address the Linder-Lumier question either. Okay, thank you. So the relief that you're requesting is a remand for determination as to whether or not the which would render the discretionary function exception inapplicable? Yes, Your Honor. Okay. Yes, Your Honor. We ask this court to hold that there's no blanket immunity for unconstitutional conduct under the discretionary function exception, and then remand this case to the district court so then it so that it can determine whether Mr. Shivers has plausibly alleged a constitutional violation such as the discretionary function exception does not apply. How about this Bivens claim? How about the Bivens claim? That he... all he has is an unsigned BP-11 form in support of his argument that he exhausted his administrative remedies, and the district court said that's not enough, and we review that decision for an abuse of discretion? Well, before the court can engage... before the district court can engage in fact-finding, it must give the parties an opportunity to to develop a record, and the district court did not do that here. So that decision to engage in fact-finding without giving Mr. Shivers an opportunity to develop a record is reviewed de novo. Did he request discovery or an evidence you were hearing? He requested discovery, maybe not... he did request discovery at least as to the issue of the discretionary function exception. He also filed a motion for appointment of counsel in which he explained that he was not going to be able to litigate this case sufficiently from his... from himself, including things like discovery. That motion was denied, so we think that it was... especially once it became clear that there was a genuine... a genuine factual dispute that more evidence could easily... perhaps could easily resolve, the district court should have allowed limited discovery into that prison 11 form, and an unsigned form would not have been accepted even if it was received by the central office, would it? Well, I think there's still... I think there's still a factual question there that more discovery could resolve. For example, it's certainly... Mr. Shivers... Thank you, Your Honor. Okay. All right, Mr. Spanauer, I think you've reserved some time for rebuttal. Why don't we hear from the government? Ms. Kourinas? Yes, good morning, and may it please the court, Jennifer Kourinas for the United States. Before I... I wanted to address the discretionary function exception argument first, but I just want to step back for a moment. Some of the difficulty here, and I understand Mr. Shivers is pro se, but two of the central issues here, that is the issue that Judge Hull raised about whether or not Mr. Shivers raised the discretionary function argument in the district court. He didn't. He never... the court never had the opportunity there to look at the constitutional issue in relation to the discretionary function exception, and in fact, the court never reached that question because it was only raised in connection with the Bivens claim, and the court dismissed that for failure to exhaust. And then... Refresh my recollection now. Did you say it was waived in your brief? We did, Your Honor. In our... in our initial brief, we did say that, and then in our supplemental brief, we didn't repeat that, but I would, you know, contend that we preserved that argument by raising it in our initial brief. And I understand it's a legal question, and this court can reach it if it chooses to, but again, part of the challenge here is it's not that the court erred by not reaching it. The court was not asked to reach it, and similarly, the court didn't err by not allowing discovery on the question of exhaustion because Mr. Shivers didn't ask for it, and I understand he's pro se, and I'm not trying to be formalistic. This matters because neither of these was addressed, and the remedy here on the merits is not to remand, and I'll get into that now. And first, the discretionary function exception here. Mr. Shivers' FTCA claim is... which is based on the Bureau of Prisons housing decisions, is controlled by Cohen, and in Cohen, this court held that an FTCA claim based on the Bureau of Prisons housing decisions in the same regulations that are at issue here is barred by the discretionary function exception, and it would turn that exception on its head, which is extremely important because all the policy reasons addressed in Galbert that it, you know, it's necessary to allow the government to function. I'm sorry... Ms. Perennis, if I could interrupt you for a moment. Did Cohen involve allegations of unconstitutional conduct? Cohen did not involve allegations of unconstitutional conduct, but let me just... Why should we rely on Cohen, then? We should rely on Cohen because every circuit that has addressed a similar challenge to Bureau of Prisons regulations, and based on the allegations in the complaint, which are new or should have known, new or should have known, and again, I'm not trying to be unduly formalistic here, but the cases where there's been a constitutional... an alleged constitutional violation where other circuits have found that the discretionary function exception doesn't apply to varying degrees, there has been a lot more than there is here, and not just labels, but allegations that are... that make it out a plausible case of a constitutional violation, and in some cases, there's been findings. Counsel, this is Judge Lagoa, but again, in those cases, here you're dealing with a pro se litigant. I mean, aren't we supposed to liberally construe these pleadings? We are to liberally construe them, Your Honor, that's correct, but if we look even liberally construing his allegations, his allegations have sort of grown over the course of the pleadings, but his allegations are that Bureau of Prisons officials knew or should have known that Mr. Dodson was unstable and that he was violent and that he told one person, Mr. Gay, that he was worried about him, okay? So those are the allegations. That is simply inadequate under Bowen to even raise a plausible Eighth Amendment violation, and so that would, again, it would turn the discretionary function exception on its head, and in the Prisoner Litigation Reform Act, I mean, the whole point here is to try to streamline this and have these grievances addressed and reduce the level of filings, and here, if you're just allowed to simply relabel conduct that otherwise is governed by Cohen, then you're really turning it on its head, and I just want to point out, Rinaldi is a Third Circuit case, and we cited that in our supplemental brief in response to Mr. Shriver's argument that all of these other circuits have held that in a plausible allegation of a constitutional violation, divest the United States of the discretionary function defense, and Rinaldi is an FECA negligence claim, and it's a prisoner case, and there, the prisoner alleged that the Bureau of Prisons forced him to reside with an inmate they knew or should have known had expressed his intent to kill him. The court construed that as a negligence claim, found the discretionary function exception applied, citing Cohen, and in that case, there was also a constitutional claim of an assault based on that self-placement, based on those same facts, so the existence of the constitutional allegation, the court there, just like the court here, isn't required to say, well, hold on a minute, since it's based on the same conduct, that must mean the discretionary function exception doesn't apply, and the reason it's so difficult here, and we cited Linder, the reason it's so difficult, I think, is because the discretionary function exception says, let's just look at the conduct, and the conduct here is housing placement, and that's governed by those regulations, and the regulations say, house people safely. You can't look at that and say, this tells me exactly what I have to do as to each inmate, so then, if you try to engraft the Eighth Amendment analysis onto that, then you have to say, well, what constitutional mandate tells me how to house people? Not engaging in cruel and unusual punishment is too general, just like the statute is here, but it seems like what Mr. Shivers is arguing is, forget Galbert, because he never addresses the merits of the discretionary function exception, either in the district court or through his very competent counsel here. He never addresses the merits of that, and in fact, he admits, both in his initial brief and in Mr. Spanauer's brief, that if it was just negligent conduct, negligence in prison housing assignments are protected by the discretionary function exception generally, and that's in Mr. Shivers' reply at six and in the supplemental reply at two, and so he admits that. He never addresses Galbert, but says, don't analyze the constitutional violation in the context of the discretionary function. We don't have to even look at that because I've alleged an Eighth Amendment violation, but an Eighth Amendment violation, a lot of the cases are, you know, Bivens cases, where, as part of the analysis, they have to address the merits of the Eighth Amendment claim, so here, we don't have the benefit of that. What we have are allegations that, if we were to look at them through the lens of an Eighth Amendment violation, would fall far short of Bowen, because it has to be a specific threat. You have to prove, both subjectively and objectively, that officials knew of that specific threat, and that they unusably failed to act. Let me see if I understand the government's argument, then. Is the government arguing that Shivers does not raise a constitutional violation? Your Honor, I would say, yes, Your Honor, and so, for that reason, I think that this court doesn't need to decide this big question that it's being asked to decide here. It doesn't need to reach that question, because they'll say, well, if he had plausibly alleged it, then we can talk about that, and then we can revisit Denson, which, again, as Mr. Spanier, you know, acknowledges is just This is Judge Wilson again. Let's say we remanded this case back to the district court, and the district judge comes to the conclusion that Shivers plausibly raises a constitutional violation. What would happen next? You mean, would the court then have to decide about the discretionary function exception, whether it applies? Yes. That's what I assume would have to say. As, again, Denson suggests in dicta and in the footnote, what does that mean as to the discretionary function exception? Then the court, because this court hasn't spoken on it, would need to decide, am I going down the road of Linder or Lumiere, and we would suggest that Linder explains why it's difficult, and, of course, we didn't decide in their brief because we didn't have the benefit of it, but Linder expresses why it's so difficult to try to impose this analysis in the discretionary function exception. So I wouldn't say every time. Now, refresh my recollection now with regard to his complaint. Does he identify the Eighth Amendment in his complaint and say that the prison officials, because of their decisions, caused his injuries through deliberate indifference to a substantial risk of harm? Your Honor, he doesn't say those words. He does, his allegations are, you know, they knew or should have known, and then on the next page of his complaint, the form, he lists several allegations, and one of them is Eighth Amendment. One of them, I think, is a due process and then negligence under the FTCA. But again, he does identify the Eighth Amendment. He doesn't say the words. Does he use the words deliberate indifference? I don't believe he did, Your Honor. I could be mistaken on that. I'm sorry, I don't have it right at my fingertips. I have both complaints right here. First, the initial complaint and the amended complaint, and it depends on whether you go on the initial complaint of the amended complaint. I could argue his initial complaint may be better than the amended, but he does say in the amended the plaintiff's right to be free of cruel and unusual punishment. He doesn't say Eighth Amendment, but that's what he's saying, so that would be enough free of cruel and unusual punishment, and he says right to due process. I don't see where he says Fifth Amendment, but that's clearly what he's alleging. I don't know if that answers your question, Judge Wilson. He doesn't say deliberate indifference to a serious risk. What he does say, however, is that they knew or should have known that Mr. Dotson had a history that they put this aggressive, unstable person. They also knew he was delusional, and that the plaintiff had previously expressed this to Mr. Gay. So she accurately describes this really a knew or should have known, but he does have specific allegations that he told Mr. Gay he was he was concerned. I don't know. Let me look at the original complaint. Are we traveling under the amended complaint, the original complaint, or both of them? The amended complaint, Your Honor. And Mr. Sanauer can... I pretty much said it. He does say they knew he had a history of assaultive behavior. He doesn't put the legalese, deliberate indifference, business, but he does say they knew he had a history of assaulting felonies, acting aggressively and violently, you know. So I don't know under a precedent why that wouldn't plausibly, you know, get him close enough on a 12b6 for a plausible constitutional violation. It could have been better. I don't know. It's kind of a hard line to draw. What I'm concerned about is that how do you handle this when he's failed to exhaust the constitutional claim? But if you... so that's, let's say, the court order rule, and again we haven't conferred, he's failed to exhaust that. That's what the district court found and made the fact-finding about that. Then you've got an FTC claim, which is common law, Florida common law. Okay, that's a negligence claim. Then on top of that, you say, well, no, you've got the discretionary function. Okay, then you do that analysis. Then you say, oh, but that doesn't apply because he's got a constitutional violation alleged. And let's assume, but then he didn't exhaust the remedy on the constitutional violation. So you then get to use the constitutional violation even though you didn't exhaust the remedy on it. Is there any case addressing that aspect of this? Or maybe we don't have failure to exhaust cases that often. I have not found a case that touches on that. I have not found a case that directly addresses that. And that is part of the challenge here. Again, is we're addressing questions that were never raised. And I understand that he's pro se, but at some point we have to say, when does judicial economy take over in the Prisoner Reform Act? When are we going to worry about that? He didn't exhaust that claim, so the court never had the opportunity to even address this constitutional violation. And I understand what his allegations are, but again, I would submit this is insufficient under Bowen. And I'm not trying to be unduly formalistic. This just isn't enough. And I'm not denying that he suffered a horrific injury. So did the prisoner in Cohen. But this is a, if you will, a sort of a mind-run negligence in connection with housing claims. And so you have to also consider, if we're being practical here about whether or not to send this back, you know, the facts in the record. He's relying on the facts in the record that say, after the fact, we're going to move this guy. He's got a history of assaulted behavior. But the facts also show that they lived together for eight months. They were in the general population, housed together. And Mr. Shires, in an interview, said, I don't know what happened. I thought we were getting along well. And there's one person he claims that he told about this. This is far from a case like where we have a specific threat. Bowen is a great example of that, again, because it involves all of these things. We have documented several instances of the prisoner assaulting other. Yes. This is Judge Lagoa. But you're arguing facts now that are, this is a motion to just, well, procedurally we're at a motion-to-dismiss stage, correct? And all the facts that you just gave us are not before the court. Well, you're right, Your Honor. I mean, this court can affirm for any reason, and that's in the record. And I point that out because I'm trying to, trying to give an overall sense of the picture here, if the court were to address this claim substantively. But you're correct, those facts are not in the record. But again, I would submit, Your Honor, that this report was correct, both on its finding that Mr. Shires failed to exhaust his administrative remedy as to Bivens, and that the discretionary function exception applies and bars his claim, and that Cohen controls this case. And I would ask the court to affirm. Thank you, Ms. Kornath. Yes. Thank you. Mr. Spainhower, you have reserved some time for questions. Thank you, Your Honor. First, this case is not Cohen. Cohen did allege simple negligence. There was no constitutional violation. And there was no knowledge that any federal official had any specific knowledge about either fears by the plaintiff or dangerous behavior by the assailant. Here, in contrast, Mr. Shivers expressed his concerns to prison officials. I recognize that the complaint uses the language knew or should have known, but in the words of Bowen, I would encourage the court not to take too parsimonious a view of the allegations, especially given that he's a pro se litigant, and we're on a motion to dismiss. But also in Bowen, there was no specific threat, and Bowen was clear that a specific threat is not required to plausibly allege a constitutional violation. And the other thing that I would point out about Bowen is that there, the plaintiff was given the opportunity to amend his complaint twice. He was given the opportunity for limited discovery. So even though Bowen is very similar in that it was a mentally ill prisoner, there was a disparity in size, Mr. Bowen had asked to be removed from the cell, there was no allegation of specific threat, and Mr. Bowen had the opportunity to get some discovery to get further details for his claims. All right Mr. Springhall, let me ask you this now. Let's say we determined that Shivers failed to exhaust his Bivens claim based on the Constitution, and all he has left is his tort claim. How do you have a constitutional violation that would support an exception to the discretion discretionary function? Well, Your Honor, I don't believe that the exhaustion requirement would apply to the constitutional aspect there because that's not forming the basis for his claim. His claim remains one under Florida state law through the federal tort claim. So in that instance, I don't believe that the exhaustion requirement would apply. The other point I would like to make is that the government brings up the Rinaldi case from the Third Circuit. The Third Circuit in that case really did not meaningfully address this issue. It touched on it in a footnote, but it made the same analytical error that the Linder case in the Seventh Circuit made in which it conflated the argument about a constitutional violation. Well, Rinaldi didn't really address at all or didn't have any Eighth Amendment analysis. That's right. It's just in a lot of weight on that case, but we would argue that it really is not helpful precedent for this court. And then finally, the government has made a few references to the need to have a process where prisoners can have their grievances addressed, but I think that this case exemplifies how absurd that can become. There's no dispute that Mr. Shivers filed a BP-8 and the lawsuit. He filed a BP-10. They said file a lawsuit. He sends the BP-11 off. He doesn't hear anything, and he's entitled to consider that denied, and so he filed a lawsuit. He does what they told him to do at every step of the way, and now the government comes in and says, aha, gotcha, you haven't exhausted. And so we don't believe that the court should find that he hasn't exhausted. We believe that the court should remand for the district court to allow discovery on the any further questions, we would ask that the district court's ruling be reversed. All right. Thank you, Mr. Spanauer and Ms. Karenas. Thank you, Your Honor. That concludes this argument, and we will proceed to the next argument. Before we do, Judge Wilson always likes to do this. He may not realize it because we're doing it. He was court-appointed. Oh, thank you for reminding me, Mr. Spanauer. You were appointed by the court to represent Mr. Shivers, and the court thanks you for your service. Thank you, Your Honor, and I appreciate the opportunity from the court.